UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

| | |
|---|---|
| Omar Wilks | : |
| | :     Civ. No. _____ |
|                Plaintiffs, | : |
|    -against- | :     Complaint |
| | :     Jury Demand |
| City of New York, Daniel Nigro, Chief Thomas J Richardson, Chief Daniel Brown, Chief Fred Shaaf, Chief David Morkal, Carlos Velez, FDNY, John and Jane Does 1-10. | : |
|                Defendants. | : |

---------------------------------------------------------------- X

## Introduction

Plaintiff is an FDNY firefighter who serves his community by placing his life on the line to fight fires. Plaintiff has been critical of the FDNY's practices, including that the racial discrimination and other acts involving firefighters. Seemingly displeased with the Plaintiff's speech, the Defendants retaliated against Plaintiff by suspending him, demoting him, and barring him from performing his firefighting duties. Plaintiff now comes before this honorable Court and seeks redress for the unlawful conduct of the Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper under 42 U.S.C. § 1983, and 28 U.S.C. § 1331 which give this Court jurisdiction for each statute, the damages, exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

2. The unlawful practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY.

## JURY DEMAND

3. Plaintiffs hereby demands a trial by jury on all issues properly triable thereby.

1

## PARTIES

4. Plaintiff is a resident of New York City.

5. Plaintiff is employed as a firefighter by the City of New York.

6. Plaintiff is an Black/African American male and is qualified for his position as a firefighter.

7. Defendant, The City of New York, is a municipal corporation, incorporated in the State of New York.

8. Defendant Daniel Nigro is the commissioner for the FDNY and responsible for its policies and practices, particularly the ones complained of herein. Defendant Daniel Nigro is the commissioner for the FDNY and responsible for its policies and practices, particularly the ones complained of herein. Defendant Nigro created and implemented the unlawful policies described herein.

9. Defendant Richardson is a high-ranking employee of the Defendant City of New York and FDNY and made the decision to direct Plaintiff not to relieve his coworker of their duties and sent Plaintiff to an unofficial meeting with other high-ranking employees of FDNY.

10. Defendant Brown is a high-ranking employee of the Defendant City of New York and FDNY and made the decision to suspend Plaintiff and direct him to attend counseling services.

11. Defendant Shaaf is a high-ranking employee of the Defendant City of New York and FDNY and made the decision to suspend Plaintiff and direct him to attend counseling services.

12. Defendant Morkal is a high-ranking employee of the Defendant City of New York and the FDNY and made the decision not to revoke Plaintiff's suspension after Plaintiff met with the high-ranking employees of the FDNY.

13. Defendant Velez is a high-ranking employee of the Defendant City of New York and the FDNY. Upon information and belief, Defendant Velez is the head of the FDNY's BITs department, and Defendant Velez supported the other individually-named Defendants in their decision to suspend Plaintiff and remove him from active-duty in his firehouse.

14. The City of New York is responsible for the Fire Department of the City of New York ("FDNY"), an agency it maintains, operates, and governs.

15. FDNY has its headquarters in Brooklyn, New York, and has its principal place of business at 9 Metro Tech Center, Brooklyn, New York 11201.

16. John and Jane Does are individuals who are working for an on behalf of the City of New York and who have participated in the unlawful conduct but whose identities are not yet known.

17. At all relevant times, the City acted through its agency, FDNY, to commit the acts alleged in this Complaint and were responsible for such acts.

18. Defendants John and Jane Does 1-10 work for the FDNY and perpetrated, enabled, and/or participated in the unlawful conduct complained of herein. The identities of these individuals are not yet known at this time but are known to Defendant City of New York.

19. All individual Defendants are sued in their official and individual capacities.

20. Defendants assisted and/or conspired to and/or acted in concert with and/or did engage in the violations of Plaintiffs' Federal, State, and City rights. During all times mentioned herein, the Defendants acted under the color of law to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the City of New York.

## FACTS

21. Plaintiff is a firefighter for the City of New York.

22. Plaintiff seeks to serve his community and places his life on the line to do so.

23. Consistent with his commitment to public service, Plaintiff is also an ordained minister, and speaks out frequently regarding inequality and discrimination in our society.

24. Firefighter Wilks also has a history of speaking up against inequalities, unethical conduct, and discrimination at the FDNY.

25. Indeed, during the protests spawned by the murder of George Floyd, a superior in Plaintiff's firehouse instructed Plaintiff and other firefighters to assist in controlling protesters by using the fire truck's water hoses.

26. Firefighter Wilks objected and insisted that such an order not be followed.

27. Plaintiff insisted that fire hoses were not to be used for crowd control and that he would not use the fire hose on protester and nor would he permit others to do the same.

28. Plaintiff escalated the order and his protest thereof throughout the fire department, which resulted in an Order banning the use of fire hoses for crowd control.

29. Throughout the beginning of this year, Firefighter Wilks sent several correspondences to elected officials such as the City Council, State Assembly, Congress, and NYS Attorney General, as well as senior FDNY personnel, including the Commissioner, regarding discriminatory actions by the FDNY and an environment at the FDNY that is hostile to Black firefights and civilians, and rife with discrimination.

30. These correspondences outlined to elected officials as well as Commissioner Nigro and senior FDNY personnel that the FDNY, which receives significant amount of public funding, was engaging in discriminatory hiring practices, permitting racism and retaliation to permeate the organization, was not adequately diversified, did not represent the CITY in key

executive positions and in higher ranks, and that people of color were not being treated fairly at the FDNY.

31. The correspondence complained of the fact that FDNY Black Civilian Workers and Black Firefighters are marginalized every day in the FDNY.

32. Plaintiff also complained about the lack of diversity in the FDNY's upper ranks and executive staff.

33. Plaintiff requested that the Commissioner of EEO resign due to his lack of EEO enforcement and meaningful investigation and action to stem racism in the FDNY. Plaintiff pointed out that the majority of EEO complaints are from people of color, and that not much is being done to investigate it or take meaningful steps to address the culture of discrimination in the FDNY.

34. Plaintiff complained to elected officials, Commissioner Nigro, and FDNY senior staff that the leadership of EEO does not reflect that demographic which is the reason the voices of Black Firefighters are not being heard. He requested that there be an immediate change in EEO leadership beginning with the Assistant EEO Commissioner stepping down from his post.

35. Plaintiff further complained about the fact that a superior officer ordered firefighters to use the firehoses on protesters as a means of crowd control

36. Plaintiff also complained of the fact that no action was taken against a superior who instructed that fire hoses be used on George Floyd protesters.

37. These communications also included asking that the Commissioner take action against an individual who the FDNY found had retaliated against Plaintiff and violated the FDNY's EEO policies.

38. The FDNY's EEO policies are in and of themselves are hollow and not enforced in any meaningful way. Plaintiff sought to change that and ensure meaningful enforcement so that discrimination and retaliation within the FDNY for making EEO complaints and standing up to unlawful orders to use the water hoses on protesters would not result in punishment for the complainants who are trying to do the right thing.

39. After sending these communications, Firefighter Wilks was summoned to FDNY headquarters by Defendants Richardson, Brown, Shaaf, Morkal and Velez, where he was admonished for his free speech and threatened with retaliation, including but not limited to, suspension and removal from the firehouse.

40. These Defendants stated that Defendant Nigro was not happy to be receiving these communications from Plaintiff, and that Defendant Nigro was insisting that action be taken against the Plaintiff for the exercise of Plaintiff's speech.

41. These Defendants sought to muzzle Plaintiff and inhibit his speech. They also retaliated against him for his speech, in concert with, and at the behest of, Defendant Nigro.

42. The fact that they brought him down to headquarters for such a meeting was unlawful and retaliatory, and aimed solely at muzzling the Plaintiff so that he would no longer speak out regarding unlawful and discriminatory conduct at the FDNY.

43. Defendants Richardson, Brown, Shaaf, Morkal and Velez admonished the Plaintiff to keep quiet and to not continue to send out his emails and speak out regarding these issues, and to not apprise Defendant Nigro and elected officials regarding funding and discriminatory practices at the FDNY.

44. Defendant Nigro, the City of New York, and other high-ranking officials such as Defendants Richardson, Brown, Shaaf, Morkal and Velez, upon information and belief, met regarding

6

Plaintiff's speech and each decided that they would seek to inhibit his speech and punish him for speaking out by concocting a meeting under false pretends, threatening Plaintiff, and then suspending him and removing him from the firehouse.

45. In further protest of the unlawful action, threats, and conduct of the Defendants, Plaintiff engaged in a protest in front of FDNY headquarters. He was protesting the unlawful treatment of himself and others.

46. Immediately thereafter, the Defendants Nigro, Richardson, Brown, Shaaf, Morkal and Velez again violated Plaintiff's free speech rights and retaliated against him by suspending him for at least thirty days.

47. These Defendants worked collectively to manufacture false claims against Plaintiff in order to justify the unlawful violation of his rights and retaliate against him for speaking publicly regarding the discrimination and unlawful acts at the FDNY.

48. Defendants Nigro, Richardson, Brown, Shaaf, Morkal and Velez served Plaintiff with a suspension notice immediately suspending him from being a firefighter.

49. Defendants falsely accused him of being AWOL from the firehouse when that didn't happen. In fact, he was not at the firehouse because they called him down to headquarters.

50. Defendants specifically suspended Plaintiff for his protests and for exercising his freedom of speech in speaking out against the unlawful and discriminatory actions of the Defendants.

51. Each Defendant participated in the conduct and carried out the suspension.

52. Defendants removed from the fire house and thus he could not work as a firefighter.

53. He could not earn his salary and wages while he was suspended.

54. He could also not earn overtime, a significant portion of income for firefighters.

55. Reassigned to a position that is less compensation, overtime, and status.

56. He was not permitted to do the job of fireman, the job he trained and was hired to do.

57. Plaintiff was not permitted to schedule mutuals, which is a perk and significant benefit of being a firefighter, whereby, a firefighter can switch schedules and work and extended shift. Thereafter, the firefighter will have an extended time off that will permit a second job or additional time with family.

58. In furtherance of their violating of Plaintiff's rights and retaliation, Defendants Richardson, Brown, Shaaf, Morkal and Velez weaponized the Counseling Services Unit ("CSU") by mandating that Plaintiff be sent for unnecessary psychological evaluations and mandatory unnecessary counseling.

59. There is nothing wrong with Plaintiff, and that he was sent for counseling and evaluation by the CSU as a condition of reinstatement is retaliatory and aimed at implying that Plaintiff was not stable emotionally or psychologically because he chose to speak out against discrimination.

60. Indeed, by requiring counseling where none is needed, the Defendant's sought to paint the Plaintiff as unstable, psychologically unfit to be a firefighter, and tarnish his image and reputation.

61. Essentially, Defendants sought to make Plaintiff seem unstable by forcing unnecessary counseling upon him and conditioning his employment and reinstatement upon it.

62. By making counseling a condition of his reinstatement, Defendants sought to chill Plaintiff's free speech and discredit him.

63. Defendants sought to make good on their threats to ruin Plaintiff, jeopardize his employment, and make his job difficult as a result of speaking out against discrimination at the FDNY that he and others experienced.

64. Plaintiff ultimately went to the counseling as mandated by the Defendants.

65. Not surprisingly, the CSU told Plaintiff that there was nothing wrong with him and that he did not need counseling.

66. Despite meeting the unlawful condition, the Defendants continued to punish Plaintiff for his speech by precluding him from returning to the firehouse and instead remaining on a light duty assignment outside of the firehouse that is normally reserved for injured firefighters.

67. Plaintiff has lost substantial wages and benefits associated with being a full duty firefighter in the firehouse and remains on light duty assignment where he cannot earn full time wages, benefits and rank.

68. Plaintiff cannot be promoted while on light duty assignment and is not eligible for other employment opportunities.

## COUNT I
## Violation of Free Speech
## First Amendment and NYS Constitution

69. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

70. The Defendants violated Plaintiff's right to free speech by punishing and inhibiting him from speaking about the unlawful and discriminatory practices at the FDNY.

71. Indeed, each of the named Defendants directed, participated, and acted in concert to abridge and prohibit Plaintiff from speaking out against the discrimination and inequality rampant at the FDNY.

72. Defendants City of New York Nigro, Richardson, Brown, Shaaf, Morkal and Velez worked together to violate Plaintiff's right to freedom of speech. These acts included each Defendants participating in the decision to remove him from the firehouse, convene and participate in a meeting to threaten him for his speech, conspire and manufacture allegations

and claims against him, suspend him, remove him from the firehouse, impose erroneous conditions such as attending the CSU in order to be reinstated, and then continually keeping Plaintiff out of the firehouse and prohibit him from being a firefighter despite no legitimate reason to do so.

73. Indeed, Defendants City of New York and Nigro did not like the public airing of the discriminatory practices at the FDNY, and therefore met with directed, and acted in concert with Defendants Richardson, Brown, Shaaf, Morkal and Velez to stifle Plaintiff's rights to free speech.

74. Defendants violated Plaintiff's Federal and State Constitutional Rights to the freedom of speech.

## COUNT II
### Retaliation
### First Amendment, NYS Constitution, NYCHRL, NYSHRL

75. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

76. Defendants City of New York, Defendants Nigro, Richardson, Brown, Shaaf, Morkal and Velez violated Plaintiff's right to free speech by inhibiting same and punishing him for his exercising his speech.

77. Each Defendants participated in the retaliation by acting in concert to identify the speech they did not like from Plaintiff, calling a meeting in which each Defendant participated in, threatening the Plaintiff in that meeting, and then suspending Plaintiff, removing him from the firehouse, and imposing onerous requirements for his return.

78. Even when Plaintiff met these unnecessary and onerous requirements, Defendants continued to deprive Plaintiff of his job he was hired to perform, namely a firefighter fighting fires and responding to emergencies, and instead continued to punish Plaintiff my keeping him out of

the firehouse, making him ineligible for overtime, and taking away the rank and role of a firefighter from him.

79. Furthermore, Defendants retaliated against Plaintiff because he opposed the discriminatory practices employed by the Defendants in violation of NYS and NYC HRL.

80. Indeed, Plaintiff opposed the meaningless EEO process put forth by the Defendants and spoke out about the racism that permeates the firehouses and civilian workplaces.

81. Plaintiff opposed the discriminatory practices that results in the upper echelon and executive team of the FDNY not having any meaningful diversity.

82. As a result of Defendants' conduct, Plaintiff lost thousands of dollars in compensation, was demoted out of the firehouse, branded to have psychological problem, and is unable to do mutuals or ineligible for promotion.

## **COUNT III**
## **AID AND ABET**
## **NYCHRL and NYSHRL**

83. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

84. Defendants City of New York, Defendants Nigro, Richardson, Brown, Shaaf, Morkal and Velez actually participated in the unlawful discrimination and therefore aided and abetted the discriminatory conduct alleged herein.

85. Defendants City of New York, Defendants Nigro, Richardson, Brown, Shaaf, Morkal and Velez enabled each other's violations.

86. Indeed, each of them met with Plaintiff, issued ordered and commands that he stop exercising his right to speech and protest, and then acted with each other to punish him for the exercise of his speech and inhibit him from protesting or speaking out against discrimination at the FDNY.

11

87. Plaintiff remains on light duty and removed from the firehouse simply because he exercised his rights to free speech and protest in speaking out against discrimination within the FDNY and for calling for reform.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) A declaration that Defendants violated Plaintiffs' Federal, State, City Rights, and a return to his status as an active duty firefighter in the firehouse;

(b) Removal of all command disciplines and the like from the Plaintiff's employment file;

(c) an injunction prohibiting further discrimination and the violation of rights described herein;

(d) Compensatory, consequential, and special damages;

(e) Punitive damages against the individual Defendants;

(f) Damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest, costs of suit;

(g) Attorneys' fees and costs;

(h) Such other and further relief as appears just and proper.

Dated: New York, NY
    August 10, 2021

                        Respectfully submitted,
                        <u>s/ Aymen A. Aboushi, Esq.</u>
                        Aymen A. Aboushi, Esq.
                        The Aboushi Law Firm
                        1441 Broadway, Fifth Floor
                        New York, N.Y. 10018
                        Tel: 212.391.8500
                        Fax: 212.391.8508